IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAINE COLEMAN,           ) | |
|                           ) | |
|     Plaintiff,    ) | |
|                           ) | Civil No. 3:15-cv-00898-SMY |
| vs.                       ) | |
|                           ) | **JURY TRIAL DEMANDED** |
| LT. VINSON, LT. MITCHELL, ) | |
| LT. HARRISON, and C/O BLESSING, ) | |
|                           ) | |
|     Defendants.   ) | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Dwaine Coleman, by and through his undersigned counsel, and for his Second Amended Complaint against Lieutenants Vinson, Mitchell and Harrison and Correctional Officer Blessing, states as follows:

## NATURE OF THE ACTION

Plaintiff is a prisoner currently confined at Pontiac Correctional Center ("PCC") and brings his claims under 42 U.S.C. § 1983 for damages and injunctive relief.  In January of 2015, while Plaintiff was housed at Vienna Correctional Center ("VCC"), Lieutenant Vinson and Correctional Officer Blessing used excessive force against Plaintiff in violation of his Eighth Amendment right to be free from cruel and unusual punishment when, without any justification, they injured him, including slamming Plaintiff's face into a cell doorway, clenching Plaintiff's jaw shut, choking him, and fabricating stories about him in order to put Plaintiff's life at risk.  These acts caused Plaintiff physical harm, including injuries to his head and mouth, threats to his life, assault, battery, and emotional distress.  Lts. Mitchell and Harrison engaged in wrongful retaliatory conduct and denied Plaintiff rightful access to the courts when they punished Plaintiff for exercising his constitutional rights, which harmed Plaintiff.  Based on Defendants' outrageous actions, Plaintiff is entitled to compensatory and punitive damages and, pursuant to 42 U.S.C. § 1988, to costs and

2164875

attorney fees reasonably incurred in the prosecution of this lawsuit. Plaintiff's claims are brought against each Defendant in both their official and individual capacities.

## THE PARTIES

1. At all times relevant herein, Plaintiff has been a prisoner in the custody of the Illinois Department of Corrections.

2. Plaintiff currently resides at PCC in Pontiac, Illinois.

3. Plaintiff previously resided at VCC in Vienna, Illinois.

4. Defendant Vinson is a correctional officer at VCC. He is sued in his individual and official capacities.

5. Defendant Blessing is a correctional officer at VCC. He is sued in his individual and official capacities.

6. Defendant Mitchell is a correctional officer at VCC. He is sued in his individual and official capacities.

7. Defendant Harrison is a correctional officer at VCC. He is sued in his individual and official capacities.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this suit is authorized by 42 U.S.C. § 1983 to redress the deprivation of rights, privileges and immunities guaranteed by the Eighth Amendment to the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit took place in this District.

**BACKGROUND**

10. Plaintiff has a long history of severe back pain and has more recently experienced pain in his genitals.

11. While incarcerated at VCC, Plaintiff repeatedly sought a diagnosis of his condition and proper medical care, but Plaintiff was not properly examined and the care he has received has generally been limited to the rote advice of "eat well and exercise more" along with the occasional ibuprofen.

12. Because Plaintiff's ongoing and unmediated pain was not adequately treated by those with the direct responsibility of caring for him, Plaintiff utilized the prison system's internal grievance system in order to draw attention to his pain and untreated medical conditions.

13. For example, Plaintiff submitted an emergency grievance dated December 1, 2014, in which he reported "excruciating pain" in his back and discomfort in his genitals for which he could not even obtain a single ibuprofen without paying 5 dollars. In his grievance, Plaintiff reported being in "extreme pain for months" at VCC and making repeated requests for proper treatment. Despite the emergency nature of this grievance, Plaintiff received no immediate response.[1]

14. Yet, Plaintiff's pain was unrelenting, and he continued to try and work within the system to obtain proper medical treatment. In addition to submitting grievances, Plaintiff's efforts included requests for crisis intervention, attempts to hold those responsible accountable,

---

[1] On February 23, 2015, Plaintiff received a response dated January 27, 2015 (with the concurrence of VCC's chief administrative officer dated February 2, 2015), and as with all of his grievances, this one was denied without obtaining further information from Plaintiff or allowing him to respond to information that was used against him before the denial was issued.

3

declarations of hunger strikes, and the use of other opportunities to draw attention to Plaintiff's untreated back pain and worrisome genital pain.

15. There efforts were not well received, especially by the ground-level prison personnel who had contact with Plaintiff. These prison personnel, including Defendants, regarded Plaintiff as a nuisance and as someone who needed to be put back into his place.

16. On or about November 17, 2014, Plaintiff requested proper medical treatment after prison personnel interfered with Plaintiff's attempt to take some medication.

17. In response, Plaintiff requested crisis intervention and indicated that he would exercise his right to submit a grievance.

18. Lt. Mitchell told Plaintiff that he would be placed in the segregation unit if he persisted in exercising his right to submit a grievance.

19. Plaintiff would not relent and filed a grievance,[2] and Plaintiff was placed in segregation.

20. Because Plaintiff had received no substantive response to any of his grievances and his pain remained untreated, Plaintiff decided to try a different approach, and on December 11, 2014, he sent a complaint letter.

21. In his letter, Plaintiff demanded that prison personnel (specifically, Lt. Harrison) act and respond to his grievances to be afforded proper medical care. If Lt. Harrison failed to act,

---

[2] The grievance is dated November 17, 2014, and the grievance was denied via a report dated February 13, 2015 (with the concurrence of the VCC's chief administrative officer, dated March 2, 2015). Plaintiff appealed to the Administrative Review Board ("ARB"), which remanded the matter back to prison officials at VCC via a letter dated August 19, 2015. Thereafter, the grievance was denied for a second time via a report dated September 1, 2015 (with the concurrence of the prison's chief administrative officer, dated September 14, 2015). Plaintiff appealed, and the ARB affirmed the second denial via a letter dated October 14, 2015.

Plaintiff wrote that he would exercise his lawful right to file a civil action for a violation of Plaintiff's rights under the Eighth Amendment to the Constitution.

22. Lt. Harrison wrongfully retaliated and denied Plaintiff access to the courts by improperly treating Plaintiff's statement as a threat and formally charging Plaintiff with making a threat, engaging in intimidation, and acting with insolence.

23. As a direct result, Plaintiff was again placed in segregation.

24. Plaintiff again filed a grievance.[3]

25. Because Plaintiff's grievances, letters, requests for crisis intervention, and even declarations of hunger strikes failed to attract attention to the issue of Plaintiff's untreated pain and only seemed to result in punishment, Plaintiff tried a more drastic approach of obtaining attention and flooded his cell on December 31, 2014.

26. Defendant Vinson responded and acted viciously and inappropriately by intentionally dumping all of Plaintiff's personal property in a puddle of water in Plaintiff's prison cell. This resulted in the destruction of some of Plaintiff's personal property, including Plaintiff's legal paperwork.

27. At that time, Vinson also attempted to assault Plaintiff, but the assault was prevented by another correctional officer.

28. Plaintiff was then handcuffed in the prison shower for no less than 2 hours before being placed alone in a segregation ward that left Plaintiff entirely isolated.

---

[3] The grievance is dated December 11, 2014, and the grievance was denied via a report dated April 20, 2015 (with the concurrence of the VCC's chief administrative officer, dated April 20, 2015). Plaintiff appealed to the ARB on May 6, 2015, and the ARB affirmed the denial of his grievance on October 21, 2015.

29. As a result, Plaintiff expressed suicidal ideation and was taken from segregation to a crisis cell.

30. While in the crisis cell, Plaintiff's physical condition was monitored, which monitoring included obtaining physical assessments by a nurse who was accompanied by correctional officers.

31. On December 31, 2015, a prison nurse (accompanied by Defendant Vinson and another officer) was involved in assessing Plaintiff's physical condition. This nurse began ridiculing Plaintiff and stated that she was "more of a man" than Plaintiff would ever be. In response, Plaintiff stated, "Yeah, I bet you are."

32. In response, Vinson angrily attempted to strike Plaintiff but was only prevented from doing so by the other accompanying officer who told Vinson, "It isn't worth it."

33. Later, another correctional officer threatened Plaintiff by telling him that there were no cameras in range of Plaintiff's cell and that "they" could do anything they wanted, including telling prison officials that it was Plaintiff who tried to assault Vinson.

34. Plaintiff subsequently declared a hunger strike, knowing that the declaration of a hunger strike requires that certain prison protocols be filed, including physical assessments by a health provider.

35. On January 3, 2015, Defendants Vinson and Blessing escorted Plaintiff to the location where the physical assessment was to be performed.

36. During the assessment, Plaintiff was attempting to provide information to the nurse, but Vinson was interfering. Plaintiff encouraged Vinson to stop interfering and stated that Vinson's present role was to provide security.

37. The nurse became angry and ended the assessment. Plaintiff protested, stating that this was a violation of hunger strike protocol and that he would file a grievance.

38. This angered Vinson, who pulled the handcuffed Plaintiff back to the crisis cell.

39. In returning Plaintiff to his cell, Vinson slammed Plaintiff's face into the doorway of the cell, which chipped Plaintiff's tooth and caused a head injury.

40. Vinson then reared back to kick Plaintiff, but another officer stopped Vinson from kicking Plaintiff.

41. With the door of the crisis cell closed behind him, Plaintiff remained handcuffed with his hands behind his back, and Vinson told him to back up to the "chuck hold" in order to have the handcuffs removed. When he did so, Vinson violently twisted Plaintiff's arms causing him to scream in pain.

42. Later, a nurse arrived to obtain Plaintiff's urine sample. Plaintiff attempted to obtain medical attention for the injuries he sustained as a result of being slammed into the cell door by Vinson and of having his arms twisted.

43. Instead of obtaining any treatment or being afforded an opportunity to even speak, Defendant Blessing grabbed Plaintiff around the throat and choked him, while Defendant Vinson grabbed Plaintiff's jaw so that Plaintiff could not speak any further to the nurse.

44. After the shift change, Plaintiff reported what had happened to him.[4]

---

[4] On or about January 14, 2015, Plaintiff filed a grievance that named Vinson and Blessing and set forth the facts concerning the assault and other wrongful acts that Plaintiff suffered at their hands. This grievance was denied. On or about January 22, 2015, Plaintiff appealed to the ARB. In a letter dated June 5, 2015, the ARB denied Plaintiff's grievance.

45. Thereafter, on January 4, 2015, Plaintiff was moved to a cell in the health care unit that had no running water and exterior doors were left ajar or otherwise opened in order to let the cold in and make Plaintiff extremely cold and uncomfortable, thereby threatening Plaintiff's health and wellbeing.

46. On January 5, 2015, Warden Hilliard spoke to Plaintiff, and Plaintiff reported to Warden Hilliard what Vison and Blessing had done to him and how he had been subsequently treated.

47. Warden Hilliard stated that he "smelled a rat" and asked Plaintiff what he wanted. Plaintiff requested that he be released from segregation and transferred.

48. Plaintiff was released from segregation and transferred to PCC on January 14, 2015.

49. After the transfer, Plaintiff learned that on or about January 6, 2015, Vinson had maliciously and falsely told other inmates who were also transferred from VCC to PCC that Plaintiff had been placed in protective segregation at VCC because Plaintiff had "snitched" on a gang chief in Chicago.

50. Upon information and belief, the other VCC inmates who were transferred to PCC spread the lie told to them by Vinson.

51. As a result, Plaintiff was assaulted at PCC when other inmates threw urine on him and threatened his life.

52. Plaintiff has properly exhausted his administrative remedies relating to all of his claims.

## COUNT I
### (Excessive Force Against Lt. Vinson and C/O Blessing)

53. Plaintiff hereby incorporates, as though fully set forth herein, all of the allegations of the foregoing paragraphs.

8

54. Vinson and Blessing intentionally used excessive and extreme force against Plaintiff when they assaulted him on January 3, 2015. Specifically, Vinson slammed Plaintiff's face into a doorway, clenched his jaws in a tight grip, committed at least two batteries, and spread false stories about him in an attempt to threaten his life. Specifically, Blessing choked Plaintiff.

55. Excessive force was used solely to cause Plaintiff harm and for no other purpose.

56. Vinson and Blessing both caused Plaintiff harm, including causing Plaintiff injuries to his head and mouth and emotional distress.

57. Vinson and Blessing acted under the color of law.

## COUNT II
### (Retaliation Against Lt. Mitchell)

58. Plaintiff hereby incorporates, as though fully set forth herein, all of the allegations of the foregoing paragraphs.

59. On or about November 17, 2014, Plaintiff stated that he would exercise his protected right to submit a grievance concerning the denial of adequate medical care to which he was constitutionally entitled.

60. Mitchell wrongfully threatened that, if Plaintiff exercised his protected right to file a grievance, Plaintiff would be placed in segregation.

61. Plaintiff submitted a grievance.

62. Plaintiff was placed in segregation for submitting his grievance, which constitutes an adverse action such that Mitchell's retaliatory conduct would deter other inmates of ordinary firmness from exercising their respective rights to file grievances under similar circumstances.

63. Plaintiff's act in filing the grievance caused Mitchell's retaliatory conduct that resulted in Plaintiff being placed in segregation.

64. Mitchell acted under the color of law.

## COUNT III
**(Retaliation Against Lt. Harrison)**

65. Plaintiff hereby incorporates, as though fully set forth herein, all of the allegations of the foregoing paragraphs.

66. On or about December 11, 2014, Plaintiff engaged in constitutionally protected speech by writing a letter of complaint to Harrison, in which Plaintiff stated that he would exercise his rights and file a lawsuit against Harrison if Plaintiff did not receive the adequate medical care to which he was constitutionally entitled.

67. Harrison responded by filing an Inmate Disciplinary Report ("IDR") against Plaintiff for intimidation, threats, and insolence.

68. Plaintiff was punished for sending the letter of complaint by being placed in segregation for 15 days, which constitutes an adverse action such that Harrison's retaliatory conduct would deter other inmates of ordinary firmness from exercising their respective rights to file grievances under similar circumstances.

69. Plaintiff's act of sending the letter caused Harrison's retaliatory conduct that resulted in Plaintiff being placed in segregation.

70. Harrison acted under the color of law.

## COUNT IV
**(Denial of Access to the Courts Against Lt. Mitchell)**

71. Plaintiff hereby incorporates, as though fully set forth herein, all of the allegations of the foregoing paragraphs.

72. On or about November 17, 2014, Mitchell intentionally threatened Plaintiff by stating that, if Plaintiff exercised his right to file a grievance (thereby commencing the process of

10

reaching the courts) concerning the denial of adequate medical care, Plaintiff would be punished and placed in segregation.

73. Plaintiff submitted a grievance, and Plaintiff was placed in segregation.

74. Mitchell acted under the color of law.

75. Mitchell's conduct hindered Plaintiff's effort to rightful assert and pursue a non-frivolous legal claim.

76. Plaintiff was harmed by Mitchell's misconduct, which included having to endure the indignity and isolation of being placed in segregation.

## COUNT V
### (Denial of Access to the Courts Against Lt. Harrison)

77. Plaintiff hereby incorporates, as though fully set forth herein, all of the allegations of the foregoing paragraphs.

78. On or about December 11, 2014, Harrison intentionally issued an IDR against Plaintiff—charging him with intimidation, threats and insolence—because Plaintiff sent Harrison a letter in which Plaintiff stated that he would exercise his rights and file a lawsuit against Harrison if Plaintiff did not receive the adequate medical care to which he was constitutionally entitled.

79. Harrison acted under the color of law.

80. Harrison's conduct hindered Plaintiff's rightful efforts to pursue a non-frivolous legal claim by punishing him and isolating him in segregation.

81. Plaintiff was harmed by Harrison's misconduct, which included having to endure the indignity and isolation of being placed in segregation.

WHEREFORE, Plaintiff Dwaine Coleman hereby requests against all Defendants, jointly and severally, (1) compensatory damages; (2) punitive damages; (3) his costs and attorney's fees incurred herein; (4) injunctive relief; and (5) for such further relief as this Court deems proper.

Respectfully submitted,

**LEWIS RICE LLC**

/s/ Michael J. Hickey
Michael J. Hickey, #6272404(IL)
600 Washington Ave., Suite 2500
St. Louis, Missouri 63101-1311
Telephone: (314) 444-7630
Facsimile: (314) 612-7630
mhickey@lewisrice.com

*Counsel for the Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned certifies that on this 3rd day of June, 2016, a true and correct copy of the foregoing was served via operation of the Court's electronic case filing system upon counsel of record in this matter.

/s/ Michael J. Hickey