IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DWAINE COLEMAN, #B62923,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 15-cv-00898-SMY |
| | ) |
| **LT. VINSON,** | ) |
| **LT. MITCHELL,** | ) |
| **LT. HARRISON,** | ) |
| **and C/O BLESSING,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is now before the Court for consideration of the Second Amended Complaint (Doc. 16) filed on behalf of Plaintiff Dwaine Coleman by his attorney, Michael J. Hickey. Plaintiff is currently incarcerated at Pontiac Correctional Center. He brings this civil rights action pursuant to 42 U.S.C. § 1983 against four officials at Vienna Correctional Center ("Vienna") who allegedly subjected him to the unauthorized use of excessive force, retaliation and/or the denial of access to the courts during his incarceration at Vienna in 2014-15 (Doc. 16, pp. 1-12). These officials include Lieutenant Vinson, Lieutenant Mitchell, Lieutenant Harrison and C/O Blessing (*id*.). In connection with these claims, Plaintiff seeks monetary damages and injunctive relief (*id*. at 11).

### Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a).

The Court is required to dismiss any portion of the Second Amended Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a Complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Second Amended Complaint survives preliminary review under this standard.

**Second Amended Complaint**

In his Second Amended Complaint, Plaintiff alleges that he has a long history of severe back pain (Doc. 16, pp. 3-8). More recently, he has begun to experience pain in his genitals as well (*id*. at 3). During his incarceration at Vienna in 2014 and 2015, he submitted numerous

written requests for medical treatment for both conditions. He was consistently told to "eat well and exercise more" (*id*.). Occasionally, he was given ibuprofen for pain. Plaintiff considered this treatment to be inadequate, so he resorted to other tactics for obtaining medical care[1] (*id*.).

On November 17, 2014, Plaintiff requested crisis intervention and threatened to file a grievance when prison officials allegedly interfered with his ability to take "some medication" (*id*. at 4). Lieutenant Mitchell warned Plaintiff that he would be placed in segregation if he filed a grievance. Plaintiff ignored this warning and filed one anyway. He was placed in segregation and his grievance was ignored. As a result, Plaintiff continued to suffer from unrelenting and untreated pain in his back and genitals (*id*.).

On December 1, 2014, Plaintiff submitted an emergency grievance to complain of "excruciating pain" in his back and genitals (*id*. at 3). He reported being in "extreme pain for months" (*id*.). Plaintiff received no response to this grievance until it was denied almost three months later (*id*.).

On December 11, 2014, he sent a letter demanding that Lieutenant Harrison respond to his grievance and his request for medical care. Plaintiff threatened to file a civil rights action against the lieutenant if he failed to act in accordance with Plaintiff's demands (*id*. at 4-5). In response, Lieutenant Harrison "wrongfully retaliated" against Plaintiff and denied him access to the courts by placing Plaintiff in segregation and charging him with "making a threat, engaging in intimidation and acting with insolence" (*id*. at 5). Plaintiff subsequently filed a grievance to complain about the incident and it too was denied (*id*. at 5, n. 3).

Desperate for medical treatment, Plaintiff resorted to more extreme measures. He flooded his cell on December 31, 2014 (*id*. at 5). Lieutenant Vinson responded and acted

---

[1] Plaintiff's Second Amended Complaint mentions no Eighth Amendment claim for deliberate indifference to his medical needs. That claim, like any other claim that is not addressed in the Second Amended Complaint, is considered dismissed without prejudice.

"viciously and inappropriately" by dumping all of Plaintiff's personal property on the wet floor, resulting in the destruction of some of the property and legal paperwork. Lieutenant Vinson then attempted to assault Plaintiff, but another officer prevented him from doing so. Instead, Plaintiff was left handcuffed in the prison shower for at least two hours before being isolated from other inmates in segregation (*id.*).

The same day, Plaintiff expressed suicidal ideations and was moved to a crisis cell. During the routine physical assessment that coincided with his placement in the crisis cell, Lieutenant Vinson again tried to strike Plaintiff (*id.* at 6). The lieutenant was prevented from doing so by another officer, who intervened and told him that "[i]t isn't worth it" (*id.*). Nevertheless, the officer made it clear that "they" could do anything they wanted to Plaintiff.

On January 3, 2015, Plaintiff went on a hunger strike (*id.*). He knew that the prison followed "certain protocols" for inmates who declared a hunger strike, including a physical assessment by a heath provider. Defendants Vinson and Blessing escorted Plaintiff to the location where the physical assessment was to be performed. Plaintiff alleges that Lieutenant Vinson "interfer[ed]," during the assessment, but he does not explain how. Plaintiff told the lieutenant that his "present role was to provide security" (*id.*). Plaintiff's comment angered the nurse, who refused to complete the assessment, even after Plaintiff informed the nurse that doing so violated hunger strike protocol and warranted another grievance (*id.* at 7).

Lieutenant Vinson became angry when he heard Plaintiff's comments and dragged Plaintiff back to his cell by his handcuffs (*id.*). Once there, the lieutenant "slammed Plaintiff's face into the doorway of the cell, which chipped Plaintiff's tooth and caused a head injury" (*id.*). Lieutenant Vinson then "reared back to kick Plaintiff, but another officer stopped Vinson" from doing so (*id.*). When the door of the crisis cell closed, Lieutenant Vinson instructed Plaintiff to

back up to the "chuck hold" so that he could remove Plaintiff's handcuffs. Plaintiff did so, and Lieutenant Vinson "violently twisted Plaintiff's arms causing him to scream in pain" (*id*.).

Following this incident, Plaintiff attempted to obtain medical treatment for his injuries. When he requested medical care, C/O Blessing grabbed Plaintiff around the throat and choked him. Lieutenant Vinson then grabbed Plaintiff's jaw so hard that Plaintiff could not speak to the nurse (*id*.). Plaintiff filed a grievance to complain about the incident. It was denied (*id*. at 7, n. 4).

On January 4, 2015, Plaintiff was moved to a cell in the prison's health care unit. The cell lacked running water and was extremely cold and uncomfortable. He complained and was interviewed by Warden Hilliard the next day. When the warden asked Plaintiff what he wanted, Plaintiff said that he wanted to be released from segregation and transferred to another prison. Plaintiff's request was granted. He was released from segregation and transferred to Pontiac Correctional Center ten days later (*id*. at 8).

At Pontiac, Plaintiff learned that Lieutenant Vinson spread a rumor about Plaintiff before he was transferred. The lieutenant allegedly told other inmates who were also transferring to Pontiac that Plaintiff "snitched" on a gang chief in Chicago. When the rumor spread to other inmates at Pontiac, Plaintiff's life was threatened and inmates threw urine on him (*id*.).

## Discussion

In connection with the events described above, Plaintiff now brings the following claims against the defendants:

> **Count 1:** Defendants Vinson and Blessing subjected Plaintiff to the unauthorized use of excessive force and/or failed to protect him from the same in violation of the Eighth Amendment (Doc. 16, pp. 8-9).

> Count 2: Defendant Mitchell retaliated against Plaintiff for threatening to and actually filing a grievance against him by placing him in segregation on or around November 17, 2014 (Doc. 16, pp. 9-10).
>
> Count 3: Defendant Harrison retaliated against Plaintiff for writing a letter in which he threatened to file suit against the defendant by placing him in segregation for fifteen days on or around December 11, 2014 (Doc. 16, p. 10).
>
> Count 4: Defendant Mitchell denied Plaintiff access to the courts by threatening him with segregation for filing a grievance on or around November 17, 2014 and then placing him in segregation after Plaintiff did so (Doc. 16, pp. 10-11).
>
> Count 5: Lieutenant Harrison denied Plaintiff access to the courts by issuing a disciplinary report against Plaintiff that resulted in his placement in segregation on or around December 11, 2014 after Plaintiff sent the defendant a letter threatening to sue him (Doc. 16, pp. 11-12).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed herein are considered dismissed without prejudice.

**Count 1**

The Eighth Amendment forbids the wanton and unnecessary infliction of pain upon prisoners. A claim arises when a prison official "use[s] force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). When determining whether the use of force is legitimate or malicious, the Court considers several factors, including the need for force, the amount of force used, the threat an officer reasonably perceived, the effort made to temper the severity of the force used and the

extent of the injury suffered by the prisoner.  *Hudson*, 503 U.S. at 7; *Hendrickson*, 589 F.3d at 890; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

An Eighth Amendment claim may also arise when a prison official fails to protect a prisoner from the use of unauthorized force by other officers.  *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases).  This duty to protect inmates extends to the protection of "prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825 (1994).  Officials "incur liability for the breach of that duty when they [a]re 'aware of a substantial risk of serious injury to [an inmate] but nevertheless fail[] to take appropriate steps to protect him from a known danger.'"  *Rice ex rel. Rice v. Correctional Med. Serv.*, 675 F.3d 650, 669 (7th Cir. 2012) (citing *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)).  *See also Santiago*, 599 F.3d at 758-59.

The Second Amended Complaint suggests that Defendants Vinson and Blessing may have used excessive force against Plaintiff or failed to protect him from its use (Doc. 16, p. 7).  On or around January 3, 2015, Plaintiff allegedly sustained injuries when Defendant Vinson slammed his face in the doorway of a cell.  Defendant Blessing allegedly choked Plaintiff during the same incident (*id*.).  Plaintiff also claims that Defendant Vinson spread a rumor among inmates who transferred with Plaintiff to Pontiac that he was a "snitch," thereby endangering his safety (*id*. at 8).  These allegations suggest that Defendants Vinson and Blessing may have subjected Plaintiff to the unauthorized use of excessive force or failed to protect him from harm, in violation of the Eighth Amendment's proscription against cruel and unusual punishment.  Accordingly, Count 1 is subject to further review against Defendants Vinson and Blessing.

**Counts 2 and 3**

A retaliation claim arises under the First Amendment when: (1) a plaintiff engages in constitutionally protected speech; (2) he suffers a deprivation that would likely deter future First Amendment activity; and (3) the protected speech is a motivating factor in the defendants' actions. *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). To state a claim, Plaintiff must allege a "chronology of events from which retaliation can be inferred," and show that retaliation was the motivating factor for the actions. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977).

The allegations support a claim of retaliation against Defendant Mitchell in Count 2. In the Second Amended Complaint, Plaintiff alleges that Defendant Mitchell placed him in segregation in retaliation for filing a grievance to complain about the denial of adequate medical care on or around November 17, 2014 (Doc. 16, pp. 9-10). Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The chronology of events set forth in the Second Amended Complaint suggests that Defendant Mitchell did just that. Accordingly, Count 2 is subject to further review against Defendant Mitchell.

However, Plaintiff's retaliation claim in Count 3 against Defendant Harrison does not survive screening. According to the allegations, Plaintiff was issued a disciplinary ticket for "making a threat, engaging in intimidation, and acting with insolence," after he submitted a letter

threatening to sue the defendant if he did not submit to Plaintiff's demands for medical care as described in the letter (Doc. 16, pp. 4-5). Standing alone, threats to file a grievance or lawsuit provide no basis for a retaliation claim. *See Bridges*, 557 F.3d at 555. Further, it is not clear what the letter actually stated, as Plaintiff did not file a copy of it with his Second Amended Complaint or describe it in any detail. Having failed to establish that Plaintiff's letter constituted protected speech, the Court cannot allow Count 3 to proceed against Defendant Harrison and this claim shall be dismissed without prejudice against this defendant.

### Counts 4 and 5

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004); *Bounds v. Smith*, 430 U.S. 817 (1977). First, a prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds*, 430 U.S. at 828). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. A prisoner must show actual substantial prejudice to specific litigation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993).

The allegations offered in support of these claims fail to satisfy either of these requirements, particularly the second one. With respect to Count 4, Plaintiff claims that Defendant Mitchell denied him access to the courts by placing him in segregation when Plaintiff filed a grievance against him on November 17, 2014. In Count 5, Plaintiff claims that Defendant

Harrison issued him a disciplinary report and placed him in segregation when he wrote a letter threatening to sue this defendant on December 11, 2014. In both instances, Plaintiff fails to explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). Plaintiff is required to identify the underlying claim that was lost and he fails to do so in the Second Amended Complaint. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

To the extent that these claims arise from the defendants' interference with Plaintiff's ability to file grievances and exhaust his administrative remedies, the Second Amended Complaint still supports no access-to-courts claim. Plaintiff is required to exhaust *available* administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004). An officer's interference with his grievances renders the process unavailable (*id.*). Under such circumstances, an inmate is excused from the exhaustion requirement. Count 4 against Defendant Mitchell and Count 5 against Defendant Harrison are dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 3** and **5** are **DISMISSED** without prejudice against Defendant **HARRISON** and **COUNT 4** is **DISMISSED** without prejudice against Defendant **MITCHELL** for failure to state a claim upon which relief may be granted. These claims are **DISMISSED** with prejudice against those defendants who are not named in connection with each claim.

**IT IS FURTHER ORDERED** that **COUNT 1** is subject to further review against Defendants **VINSON** and **BLESSING**, and **COUNT 2** is subject to further review against Defendant **MITCHELL**. These claims are **DISMISSED** with prejudice against those defendants who are not named in connection with each claim.

**IT IS ALSO ORDERED** that Plaintiff's request for injunctive relief is **DENIED** without prejudice. Plaintiff does not indicate what type of injunctive relief he seeks. However, Plaintiff is no longer housed at Vienna Correctional Center where all of the defendants are employed, rendering his request for injunctive relief moot. *See Lehn*, 364 F.3d at 871 ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.").

With regard to **COUNTS 1** and **2,** the Clerk of Court shall prepare for Defendants **VINSON, BLESSING** and **MITCHELL**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 16) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 7, 2016**

s/ STACI M. YANDLE
**STACI M. YANDLE**
**United States District Judge**