IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DWAINE COLEMAN, B62923, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-00898-SMY-RJD |
| | ) | |
| JARED BLESSING, | ) | |
| DAVID MITCHELL and | ) | |
| JAMES VINSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

YANDLE, District Judge:

This matter is before the Court on Defendant David Mitchell's Motion for Summary Judgment on the basis that Plaintiff Dwaine Coleman failed to exhaust administrative remedies before filing suit. (Doc. 35). The motion is opposed. (Doc. 40). For the following reasons, the motion is **DENIED**.

**Background**

The defendants in this action are Illinois Department of Corrections ("IDOC") employees, and Plaintiff Dwaine Coleman is a former IDOC inmate. Defendant Mitchell asserts that Coleman failed to exhaust administrative remedies before filing suit, thereby violating the Prison Litigation Reform Act exhaustion requirement.

Coleman filed his initial Complaint on August 13, 2015. (Doc. 1). Upon 28 U.S.C. § 1915A screening, Coleman's Complaint was dismissed for improper joinder and for failure to state a claim. (Doc. 7). The § 1915A Screening Order granted Coleman leave to file an Amended Complaint, and he did so on October 7, 2015. (Doc. 8). However, the Amended

1

Complaint suffered from the same defects as the original Complaint. The Court dismissed Coleman's first Amended Complaint, but recruited counsel to assist him.

Coleman's Second Amended Complaint was filed on June 3, 2016. (Doc. 16). The Court screened the Second Amended Complaint and held that it articulated the following colorable claims:

> **Count 1:** Defendants Vinson and Blessing subjected Plaintiff to the unauthorized use of excessive force and/or failed to protect him from the same in violation of the Eighth Amendment (Doc. 16, pp. 8-9).
>
> **Count 2:** Defendant Mitchell retaliated against Plaintiff for threatening to and actually filing a grievance against him by placing him in segregation on or around November 17, 2014 (Doc. 16, pp. 9- 10).

The general timeline of Coleman's use of the administrative remedies process appears to be undisputed. Coleman alleges that on or about November 17, 2014, he told Mitchell "that he would exercise his protected right to submit a grievance concerning the denial of adequate medical care to which he was constitutionally entitled." (Doc. 16, p. 9, ¶ 59). Coleman was then an inmate at Vienna Correctional Center ("Vienna"). Mitchell allegedly threatened Coleman that he would place him in disciplinary segregation if he filed such a grievance. *Id*. at ¶ 60. Coleman did submit a grievance and Mitchell subsequently placed him in segregation. *Id*. at ¶ 61-62. Coleman asserts that he was placed in segregation as retaliation for filing the grievance. *Id*. at ¶ 63.

The record reflects that Coleman submitted a grievance dated November 17, 2014, which describes the Mitchell segregation retaliation incident. (Doc. 36-2, pp. 23-24). Coleman initially submitted it to the Vienna warden as an "emergency" grievance. *Id*. The Vienna warden

determined that the grievance did not present an emergency and directed Coleman to submit the grievance through the normal non-emergency process. *Id*. The Vienna warden signed and dated the grievance November 18, 2014. *Id*.

The grievance was received by Coleman's counselor, Julia Rodriguez, on December 1, 2014. *Id*. Rodriguez responded to the grievance on December 22, 2014. *Id*. After receiving Rodriguez's response, Coleman submitted the grievance to the Vienna prison administration and the Vienna warden denied the grievance on March 2, 2015. *Id*. at p. 21. Coleman then appealed the decision to the IDOC Administrative Review Board ("ARB"). *Id*. at p. 20. In a letter dated August 19, 2015, the ARB informed Coleman that his grievance was to be remanded back to Vienna for further investigation. *Id*. at p. 20.

After the grievance was remanded, the Vienna grievance officer collected a statement from Mitchell. *Id*. at p. 17. On September 14, 2015, the Vienna warden again denied the grievance. *Id*. at p. 17. Coleman then resubmitted the grievance to the ARB and on October 14, 2015, the ARB issued a final denial. *Id*. at p. 16. Although the ARB did not issue a final ruling on his grievance until October 14, 2015, Coleman initiated this lawsuit on August 13, 2015. (Doc. 1).

**Discussion**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The facts and reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Under the Prison Litigation Reform Act, inmates must exhaust available administrative remedies before filing conditions of confinement lawsuits in federal court. 42 U.S.C. § 1997e(a). If an inmate does not exhaust prior to filing suit, the defendants may raise lack of exhaustion as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 919, 166 L. Ed. 2d 798 (2007). However, an inmate's lack of exhaustion may be excused if the administrative remedies process is "unavailable" to a prisoner, such as when prison officials thwart or obstruct the grievance process. *Ross v. Blake*, 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016).

The IDOC has implemented a three step grievance process. First, an inmate must attempt to resolve the issue with his counselor. 20 Ill. Admin. Code § 504.810(a). If the inmate is dissatisfied with the counselor's response, he or she may proceed to step two by filing a grievance with the institution's grievance officer who then makes a recommendation for the prison warden. *Id*. The warden then issues a ruling on the grievance. If the inmate is dissatisfied with the warden's decision, he may appeal the grievance to the ARB. 20 Ill. Admin. Code § 504.850(a). This is the last step. The grievance process is completed when the ARB issues a decision.

Here, Coleman filed his initial Complaint on August 13, 2015, but the ARB first replied to his appeal on August 19, 2015. Mitchell thus argues that Coleman filed suit too soon. Conversely, Coleman argues that he did exhaust administrative remedies prior to the filing of the first viable complaint (the June 3, 2016 Second Amended Complaint). Specifically, Coleman contends that because the initial Complaint and First Amended Complaint were dismissed for failure to state a claim, any lack of exhaustion prior to those two filing dates should not be held against him. In other words, Coleman asserts that he was only required to exhaust administrative remedies prior to the filing of his June 3, 2016 Second Amended Complaint.

There appears to be no binding case law directly addressing the present scenario confronting the Court. Turning to the text of the relevant statute, the PLRA states in part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

The statute clearly requires prisoner plaintiffs to exhaust administrative remedies before initiating litigation. However, under some circumstances, a prisoner plaintiff may add newly exhausted claims in an amended complaint. Plaintiff cites to the holding in *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005), in support of his position. In *Barnes*, the Seventh Circuit held that a prisoner could bring newly exhausted claims in an amended complaint even though such claims had been exhausted *after* the initial Complaint was filed. (emphasis added). *Id*. at 678.

Although Coleman's procedural history is not identical to that of the plaintiff in *Barnes*, following the Seventh Circuits rationale, this Court finds that Coleman's previously dismissed Complaints should not preclude him from bringing newly exhausted claims in his Second Amended Complaint. Coleman's initial Complaint and First Amended Complaint were almost completely devoid of factual support, so that the nature of the claims was far from clear. Although Coleman may have intended to bring his claim against Mitchell in his initial Complaint, such speculation about Coleman's intentions should not form the basis of dismissal. While Coleman may have inadvertently benefited from his poorly drafted pleadings, when the procedural history is viewed as a whole, Coleman exhausted administrative remedies as to Mitchell prior to filing a cognizable claim against him. As such, Mitchell's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

**DATED:  November 1, 2017**

                                              **s/ Staci M. Yandle**
                                              **STACI M. YANDLE**
                                              **United States District Judge**