IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DWAINE COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-898-RJD |
| | ) | |
| LT. VINSON, C/O BLESSING, and LT. MITCHELL, | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Dwaine Coleman, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Vienna Correctional Center ("Vienna"). More specifically, Plaintiff alleges that he was subjected to the unauthorized use of excessive force and retaliation at Vienna. Plaintiff is proceeding in this action on the following claims:

> Count One: Defendants Vinson and Blessing subjected Plaintiff to the use of excessive force and/or failed to protect him from the same in violation of the Eighth Amendment.
>
> Count Two: Defendant Mitchell retaliated against Plaintiff for threatening to and actually filing a grievance against him by placing him in segregation on or around November 17, 2014.

Defendant Mitchell filed a motion for summary judgment on Count Two that is now before the Court (Docs. 47 and 48). Plaintiff filed a response (Doc. 49) and Defendant filed a reply (Doc. 50) that will be considered. For the reasons set forth below, the motion is **DENIED**.

**FACTUAL BACKGROUND**

Plaintiff suffers from chronic back pain (Deposition of Dwaine Coleman, Doc. 48-1 at 50).

On November 17, 2014, following his arrival at Vienna after a long bus ride, Plaintiff was in excruciating pain and asked Officer Dent for water so he could take his pain medication (*Id.* at 102, 46). After Plaintiff was refused water, he requested a crisis team (*Id.* at 47). Officer Dent then called the acting sergeant, who called Defendant Lt. Mitchell to the scene (*Id.* at 48-49). Plaintiff notified Defendant Mitchell that he was requesting a crisis team and a hunger strike, and advised him he would write a grievance against Mitchell (*Id.* at 45). Plaintiff testified that Defendant Mitchell told him he could either go back upstairs or, if he continued to request assistance, he would place Plaintiff in segregation (*Id.* at 49). Plaintiff told Defendant Mitchell he was going to continue to request assistance (*Id.*).

Plaintiff testified that Defendant Mitchell then escorted him to segregation [1] (*Id.*). Defendant Mitchell does not recall escorting Plaintiff to segregation (Declaration of David Mitchell, Doc. 48-1 at 3, ¶ 14). Plaintiff recalls that he was issued a disciplinary ticket authored by Officer Dent a few days later (Doc. 48-1 at 49). The disciplinary ticket, dated November 17, 2014, charges Plaintiff with the offenses of insolence and disobeying a direct order (Doc. 48-1 at 3, ¶ 13; *see* Doc. 48-1 at 125). The ticket reads as follows:

> On the above date and approximate time this R/O was assigned to 2nd floor movement. Inmate Coleman #B62923 came to the desk and said he had a pass. This R/O informed inmate Coleman #B26923 that there was no pass. Inmate just stood there and said something under his breath. This R/O informed him to go back to his bunk 2 more times. Inmate stated I a not talking to you then started to get real loud in front of other inmates. This R/O told him again to go back to his bunk. Inmate just standing there looking at this R/O. Inmate went back after this R/O told him 2 more times to go back to his bunk.

---

[1] It is not clear when Defendant Mitchell escorted Plaintiff to segregation. During his deposition, Plaintiff's testimony seemed to indicate that Mitchell escorted him to segregation immediately following their interaction. However, in his response briefing, Plaintiff suggests that he was escorted to segregation only *after* he persisted in setting forth his complaints and filing his grievance.

(*see id.*). Plaintiff denies engaging in the conduct described in the ticket (Doc. 48-1 at 43). It is undisputed that the November 17, 2014 ticket was authored by Officer Dent and initially reviewed by Defendant Mitchell (Doc. 48-1 at 3, ¶ 16; *see* Doc. 48-1 at 125). Plaintiff testified that the ticket was issued under Lt. Mitchell's orders (Doc. 48-1 at 44). Defendant Mitchell explains that after a review of the ticket he suggested to the reviewing officer, Officer Peck, that Plaintiff be removed to temporary confinement based on the seriousness of the offense (Doc. 48-1 at 3, ¶ 18).

On the same date he was issued the disciplinary ticket, Plaintiff wrote a grievance complaining about his interactions with Dent and Mitchell and asserting he was issued a false disciplinary ticket (*see* Doc. 48-1 at 6-7). Plaintiff indicated that he was segregated for seeking treatment for his medical issues and asked to be released from segregation (*see id.*). The grievance was reviewed by Plaintiff's counselor, Julia Rodriguez, who responded on December 22, 2014 (*see id.* at 6).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### DISCUSSION

In his second amended complaint, Plaintiff alleges that Defendant Mitchell retaliated against him by placing him in segregation for complaining about his treatment by prison officials and filing a grievance. A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a "motivating" factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence and show that the harm would have occurred anyway, despite the protected activity. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

The Court first considers Defendant Mitchell's contention that summary judgment is appropriate because Plaintiff did not engage in protected conduct prior to his placement in segregation. In particular, Defendant Mitchell asserts that because Plaintiff had only threatened to file a grievance prior to his placement in segregation, and such a threat is not a protected First Amendment activity, Plaintiff's claim must fail. Plaintiff rejects this argument, asserting that his protected conduct at issue includes not only threatening to file a grievance, but also actually filing a grievance and complaining about his conditions of confinement.

While the Court recognizes the ambiguity concerning the timing of Plaintiff's placement in segregation, it need not determine exactly when Defendant Mitchell escorted Plaintiff to segregation as it is not dispositive. First, the Court rejects Plaintiff's assertion that Defendant Mitchell placed him in segregation after he filed his November 17, 2014 grievance. A review of the grievance reveals that Plaintiff was clearly in segregation during the time the grievance was filed (given that the request for relief includes being released from segregation). Thus, the adverse action Plaintiff complains of could not have occurred in retaliation for filing said grievance. Further, in *Bridges v. Gilbert*, the Seventh Circuit considered whether a threat to file a grievance could be deemed protected activity under the First Amendment and, although it declined to provide a definitive decision on the issue, it remarked that "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment protected grievance." 557 F.3d 541, 555 (7th Cir. 2009) (emphasis in original). Although this point has not been definitively decided by the Seventh Circuit, *see Brown v. Darnold*, 505 F.App'x 584 (7th Cir. 2013), the Court finds that the mere threat to file a grievance does not constitute a First Amendment activity with the protections that are afforded therein. Accordingly, Plaintiff has not established a First Amendment retaliation claim against Defendant Mitchell related to his filing of the November 17,

2014 grievance or his threat to file the same.

Plaintiff also asserts that his complaints about treatment by prison officials and continued requests for medical assistance constitute First Amendment activity. The Court agrees. In *Bridges*, the Seventh Circuit found that a prisoner's speech can be protected even when it does not involve a matter of public concern and, in so finding, applied the legitimate penological interests test from *Turner v. Safley*, 482 U.S. 78, 79 (1987), to determine whether an inmate had engaged in protected speech. In *Watkins v. Kasper*, the Seventh Circuit further articulated that in applying the *Turner* standard to a First Amendment retaliation claim, courts should examine whether the prisoner engaged in speech in a manner consistent with legitimate penological interests. 599 F.3d 791, 794-95 (7th Cir. 2010) (citing *Bridges*, 557 F.3d at 551). In *Watkins*, the Seventh Circuit reviewed several relevant factors noted in *Turner*, including: whether a valid, rational connection exists between the regulation and the legitimate interest put forth to justify it; whether alternative means of exercising the right remain open to prison inmates; the impact accommodation of the asserted constitutional right will have on prison officials and inmates; and the availability of obvious, easy alternatives to the challenged regulation. *Id.* at 796-97 (internal quotations omitted). The Court further found that speech that has a negative impact on a legitimate penological interest, such as prison discipline, may be validly restricted. *Id.* at 797.

Here, crediting the evidence in Plaintiff's favor, the Court finds that the speech Plaintiff engaged in with Defendant Mitchell concerning his request for water and further assistance were consistent with the legitimate penological interests of the institution. Thus, a jury could find that Plaintiff engaged in protected First Amendment activity and is entitled to the protections afforded therein. A reasonable jury could also find that Plaintiff's placement in segregation amounted to a deprivation likely to deter a person of ordinary firmness from future First Amendment activity.

Defendant's argument that Plaintiff fails to meet this requirement because he filed grievances following the alleged adverse actions is unavailing. The question is not whether Plaintiff himself was actually deterred, but whether a person of "ordinary firmness" would be deterred. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

The Court next considers whether there is evidence sufficient to show that Plaintiff's complaints motivated Defendant Mitchell's alleged retaliatory action. Plaintiff may meet his burden by presenting either direct or circumstantial evidence. *Kidwell*, 679 F.3d at 965. Direct evidence is evidence which will prove a particular fact without reliance upon inference or presumption, while circumstantial evidence is evidence from which a trier of fact may infer that retaliation occurred, including suspicious timing or ambiguous oral or written statements. *Id.* (quotations and citations omitted).

Plaintiff testified that Defendant Mitchell threatened to retaliate against him by placing him in segregation if he continued complaining about his issues. It also appears Plaintiff is relying on the timing of the events to establish his prima facie case. The Seventh Circuit has held that a plaintiff's reliance on suspicious timing to establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Further, the adverse action must follow "close on the heels" of the protected expression and the plaintiff must show that the person who took the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 966. In light of Defendant Mitchell's threat to place Plaintiff in segregation, as well as the timing of the events at issue, the Court finds sufficient evidence to find Plaintiff has established his prima facie case.

Defendant Mitchell attempts to rebut Plaintiff's prima facie case and show that Plaintiff would have been sent to segregation in temporary confinement regardless of any speech he

engaged in based on the disciplinary ticket issued by Officer Dent.   The Court disagrees based on the evidence in the record that Officer Dent issued the ticket at Defendant Mitchell's direction. Although it may have ultimately been the adjustment committee's decision to impose additional time in segregation, Defendant Mitchell undisputedly approved Plaintiff's placement in temporary segregative confinement and, according to Plaintiff, was the impetus for such placement given his directive to Officer Dent.  For these reasons, Defendant Mitchell has not adequately rebutted Plaintiff's prima facie case.

Defendant Mitchell also contends that summary judgment in his favor is appropriate as he was not personally involved in the deprivation complained of — Plaintiff's placement in segregation.   In viewing the evidence in the light most favorable to Plaintiff, this argument clearly fails.  Although disputed by Defendant Mitchell, Plaintiff testified that Mitchell threatened to place him in segregation after Plaintiff indicated he would file a grievance and continue to address his issues and that Mitchell did indeed escort Plaintiff to segregation after he continued setting forth his complaints.  Plaintiff has also submitted evidence that Defendant Mitchell directed Officer Dent to issue the November 17, 2014 disciplinary ticket, reviewed the same, and approved of temporary confinement (*see* Doc. 48-1 at 125).   While the Court recognizes Defendant Mitchell's contention that Plaintiff's testimony does not accurately describe the process for placement in temporary confinement and notes Mitchell's assertion that he would lack authority to unilaterally place Plaintiff in segregation, such an issue is a dispute that should be decided by a jury.

Finally, Defendant is not entitled to qualified immunity as it was clearly established at the time of the events in question that taking actions to place Plaintiff in segregation for complaining about issues with his confinement consistent with legitimate penological objectives implicates an

inmate's constitutional rights.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Mitchell (Doc. 47) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: September 19, 2018**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**