IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAINE COLEMAN, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-898-RJD |
| JAMES VINSON, JARED BLESSING, and DAVID MITCHELL, | ) |
|       Defendants. | ) |

**DEFENDANT VINSON'S MOTION**
**FOR REDUCTION OR REMITTITUR**

NOW COMES Defendant JAMES VINSON, by and through his counsel, LISA MADIGAN, Attorney General of the State of Illinois, and respectfully moves this Court for relief from judgment pursuant to Federal Rule of Civil Procedure 59(e) because the punitive damages award against him was both unconstitutionally excessive and unreasonable based on the evidence, and states the following in support:

**INTRODUCTION**

Plaintiff Dwaine Coleman, an inmate of the Illinois Department of Corrections, initially filed this matter *pro se* on August 13, 2015. (Doc. 1.) Shortly thereafter, Coleman filed an amended complaint, as well as a motion to recruit counsel. (Docs. 8, 9.) The district court granted the motion and recruited counsel for Coleman, who then filed a second amended complaint. (Docs. 11, 12, 16.) This matter ultimately proceeded to trial on an Eighth Amendment excessive force claim against Defendants Vinson and Blessing and a First Amendment retaliation claim against Defendant Mitchell. (Doc. 74.) Following a two-day trial, the jury found in favor

of Blessing on the excessive force claim and Mitchell on the retaliation claim,[1] but in favor of Coleman on the excessive force claim against Vinson. (Doc. 79.) The jury awarded Coleman $1.00 in compensatory damages and $35,000 in punitive damages. *Id.* The court entered judgment on October 4, 2018, the day after the verdict. (Doc. 82.) Vinson now seeks relief from the entry of judgment on the ground that the punitive damages award was both excessive under the Due Process Clause of the Fourteenth Amendment and unreasonable based on the evidence.

## ARGUMENT

Federal Rule of Civil Procedure 59(e) provides that a party may move to alter or amend a judgment within 28 days after entry of judgment. Fed. R. Civ. P. 59(e). To cure an award of excessive or unreasonable punitive damages, a party may file a motion for reduction or remittitur under Rule 59(e). *See Fox v. Hayes*, 600 F.3d 819, 846 (7th Cir. 2010). Reduction is the remedy for an unconstitutionally excessive award, while remittitur is the remedy for an award that is unreasonable based on the facts. *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999).

As the Supreme Court has explained, punitive damages serve a different function than compensatory damages because they are aimed at deterrence and retribution rather than at redressing a concrete loss. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In light of these aims, the Due Process Clause prohibits grossly excessive or arbitrary punishments on a tortfeasor. *Id.* Indeed, "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty" that may be imposed. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996).

---

[1] Because Defendants Blessing and Mitchell prevailed at trial, they do not join this motion.

**I.     The Punitive Damages Award was Unconstitutionally Excessive.**

In reviewing whether a punitive damages award is unconstitutionally excessive, courts are to consider: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 575; *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953-54 (7th Cir. 2018). As outlined below, these factors weigh in favor of a finding that the $35,000 punitive damages award against Vinson was excessive.

**A.     The Reprehensibility of Vinson's Conduct.**

The Supreme Court has identified five factors for courts to consider in assessing the degree of reprehensibility of a defendant's conduct: whether (1) the harm "was physical as opposed to economic"; (2) "the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others"; (3) the plaintiff "had financial vulnerability"; (4) the conduct was an isolated incident or "involved repeated actions"; and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.

The factors here weigh in Vinson's favor. Taking Coleman's version of events as true, Vinson's conduct was an isolated and very brief use of force that did not result in any significant or long-term harm. This is best demonstrated by the fact that the jury awarded Coleman only $1.00 in compensatory damages for his asserted physical harm and emotional distress. (Doc. 79.)

Moreover, Vinson's conduct was not premeditated or malicious. *See, e.g.*, *Hendrickson v. Cooper*, 589 F.3d 887, 894-95 (7th Cir. 2009) (upholding punitive damages award where the correctional officer maliciously planned an attack on a prisoner with a disability and then arranged to "lay in wait" for the prisoner to enter his housing unit). Instead, the conduct occurred

in the spur of the moment during a charged situation in and near the prison's Health Care Unit. (Doc. 83 at 52.) According to Coleman's own description of the incident, "things got kind of, you know crazy." (*Id.* at 43.)

On the date of the incident at issue, Vinson was responsible for escorting Coleman to and from the Health Care Unit for one of his physical assessments under the prison's hunger strike protocol. (*Id.* at 18-19.) During the assessment, Coleman accused Vinson of interfering with his attempts to provide the nurse with information and told Vinson that his role merely was to provide security. (*Id.* at 19-20.) Coleman also instructed the nurse to follow the hunger strike protocol. This interaction angered the nurse, who responded to Coleman, "don't tell me how to do my job," and then ended the physical assessment. (*Id.* at 44.) Coleman protested that decision to the nurse, which, in turn, angered Vinson. Vinson pulled Coleman out of the Health Care Unit and returned him to his cell. (*Id.* at 20.) On the way back, Vinson shoved Coleman's face into the doorway of his cell—which caused a bump on Coleman's forehead and chipped one of his teeth—and then pulled his arms back and cut into his wrists when removing the handcuffs. (*Id.* at 20-21, 25, 45.) Later that evening when the nurse went into Coleman's cell to finish the physical assessment, Coleman attempted to tell the nurse that he needed medical attention for his injuries, but Vinson grabbed Coleman's jaw so that he could not speak. (*Id.* at 21.)

This case is thus unlike those in which courts have held that significant punitive damages awards are appropriate. For example, in *Cooper*, a group of correctional officers escalated a verbal argument by removing the plaintiffs' handcuffs and proceeding to kick, beat, and mace them, "inflicting cuts, severe muscular pain, and (as a consequence of the mace) a burning sensation in their eyes and skin." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). The Seventh Circuit upheld the punitive damages awards against the officers, the highest of which

was $22,500. *Id.* at 920. The jury here, by contrast, awarded Coleman $35,000 for conduct that was much less severe and harmful than the actions taken by the officers in *Cooper*.

Likewise, in *Lake*, the district court upheld a punitive damages award of $5,000 for each officer that sent an inmate to a higher security prison in retaliation for filing grievances about staff misconduct. *Lake v. Flagg*, 319 F.R.D. 252, 257-58 (S.D. Ill. 2017). As a result, the inmate, who had no history of discipline and a placement score of "minimum," spent four-and-a-half years in a higher security prison with more aggressive inmates and where he was subjected to stricter conditions, including being kept in his cell 23 hours a day. *Id.* at 257-59. Those actions, unlike the conduct at issue here, were taken in a deceitful, intentional, and retaliatory manner with repercussions that lasted nearly five years. *Id.*

Vinson's isolated strike against Coleman, which resulted in a knot on his forehead and a chipped tooth, is much less reprehensible and severe than in other cases. This factor thus weighs in favor of reducing the punitive damages award to a much more modest amount that would still deter future misconduct and impose retribution for Vinson's conduct.

B.     **Relationship between the Harm Suffered and the Punitive Damages Award.**

The next factor is the relationship between the harm suffered by the plaintiff and the punitive damages awarded by the jury. The purpose of this consideration is to ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages suffered. *State Farm*, 538 U.S. at 426; *TXO Prod., Corp. v. Alliance Res., Corp.*, 509 U.S. 443, 560 (1993). Although the Supreme Court has declined to establish a fixed ratio between the compensatory and punitive damages, it has asserted that "in practice, few awards exceeding a single digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425; *Beard*, 900 F.3d at

954. The Court has noted that a punitive damage award "of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425; *see Gore*, 517 U.S. at 581. Here, the ratio of punitive to compensatory damages is 35,000 to 1, which far exceeds the outer bounds of proportionality established by the Court. A $35,000 punitive damages award for conduct that caused $1.00 in harm is simply not reasonable and should be reduced.

Nor is the $35,000 award substantiated by cases allowing for a higher ratio in circumstances where a particularly egregious act has resulted in only a small amount of economic damages. *See State Farm*, 538 U.S. at 425. That line of decisions merely recognizes that when "compensatory damages are slight, a single-digit ratio is likely to be insufficient." *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 520 (7th Cir. 2012). These cases do not, however, support significantly higher ratios, like the 35,000 to 1 ratio here. *See, e.g.*, *Alexander v. City of Milwaukee*, 474 F.3d 437, 454 (7th Cir. 2007). To that end, courts still assess the proportionality of the award in light of the harm caused, but with acknowledgment that the single-digit-ratio standard may not always be a perfect fit. *See id.*

In fact, a review of those cases—where the single-digit-ratio standard was not applied to nominal compensatory damages awards—shows that courts have upheld much more modest punitive damages awards. *See, e.g.*, *Lake v. Flagg*, 319 F.R.D. 252, 257-58 (S.D. Ill. 2017) (upholding $5,000 in punitive damages for each of the two officers on a nominal compensatory award); *Wilson-El v. Mutayoba*, No. 12-cv-203-NJR-DGW, 2015 WL 2201564, at *4 (S.D. Ill. May 8, 2015) (upholding punitive damages award of $10,100 on a nominal compensatory award); *Gevas v. Harrington*, No. 10-cv-493-SCW, 2014 WL 4627689, at *5 (S.D. Ill Sept. 16, 2014) (upholding $10,000 in punitive damages on a nominal compensatory award).

And, the conduct that justified the punitive damages awards in those cases was much more egregious or reprehensible than was proved here. In *Lake*, the defendants acted with malice, deceit, and premeditation in retaliating against the plaintiff, and the harm lasted more than four years. *Lake*, 319 F.R.D. at 258-59. In *Wilson-El*, the constitutional violation was the result of the defendant's deliberate actions, and the violation extended over a significant period of time. *Wilson-El*, 2015 WL 2201564, at *2, 4. In *Gevas,* the plaintiff was subjected to inhumane living conditions for seven days, which the defendant ignored despite the plaintiff's repeated complaints. *Gevas*, 2014 WL 4627689, at *1. In contrast to these cases, the unconstitutional use of force here lasted a few seconds and there was no evidence that Coleman suffered any physical pain after the evening when the incident occurred.

This factor thus weighs in favor of reducing the punitive damages award here to a more proportionate amount, especially where the conduct was not so egregious as to warrant departure from the examples cited above. In short, a ratio of 35,000 to 1 under these circumstances would further no legitimate purpose and is excessive under the Due Process Clause.

      **C.**      **A Survey of Comparable Cases.**

The final guidepost for reviewing punitive damages under the Due Process Clause is the "disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 428; *Gore*, 517 U.S. at 575. In this case, Vinson was alleged to have slammed Coleman into a doorjamb, pulled his arms, and held his jaw closed to prevent him from speaking. (Doc. 83 at 19-21.) The described conduct resulted in a knot on Coleman's head and a chipped tooth. (*Id.* at 21.) But there was no evidence that either injury resulted in any pain beyond the evening of January 3, 2015 or required any medical treatment at all (except for cosmetic dental work to repair the chipped tooth). Based on comparable cases, the

punitive damages award of $35,000 is excessive and arbitrary. As an initial matter, as discussed above, this amount is excessive compared to other nominal compensatory damages cases.

Moreover, the $35,000 award is excessive in comparison to other excessive force cases. *See Cooper*, 97 F.3d at 920 (upholding $22,000 punitive damages award where officers kicked, beat, and maced prisoners, "inflicting cuts, severe muscular pain, and (as a consequence of the mace) a burning sensation in their eyes and skin"); *Terrell v. Vill. of Univ. Park*, No. 92-C-3320, 1994 WL 30960, at *1 (N.D. Ill. Feb. 1, 1994) ($10,000 punitive damages award for plaintiff who was arrested, slapped and slammed against police car); *Burks v. Harris*, No. 90 C 0728, 1991 WL 140114, at *3 (N.D. Ill. July 22, 1991) ($6,500 punitive damages award against defendant police officers for striking the plaintiff below the eye with police radio). This factor, too, weighs in favor of a reduction in this case.

### D. Reduction Is Appropriate Here.

In light of the foregoing, this Court should find that the $35,000 punitive damages award is excessive. Vinson's conduct did not warrant such a large award, especially when compared to other nominal damages and excessive force cases. Thus, a reduction of the award to no more than $5,000 is appropriate. A more modest amount would place the award squarely within the range of recent decisions addressing nominal compensatory damages, serve the retributive purposes outlined above, and be well within the dictates of the Due Process Clause.

If this Court finds that the punitive damages award was excessive under the Due Process Clause, the Court need not seek Coleman's consent to reduce the award. Although this remains an open question in the Seventh Circuit, at least two other circuits have allowed district courts to enter reductions rather than remittiturs in cases where the punitive damages award was unconstitutionally excessive. As the Eighth Circuit asserted, the "reduction of [an] excessive

punitive damages award in conformity with constitutional limits" is a determination made as a matter of law. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049 (8th Cir. 2002), citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). In *Johansen*, the Eleventh Circuit explained:

> No one would dispute that the court, not the jury, has the responsibility for determining this constitutional limit [on punitive damages awards]. Courts decide questions of law, not juries. The real issue, therefore, is whether the court may enter judgment for a constitutionally reduced award without plaintiff's consent. So put, the question answers itself. Plaintiff's consent is irrelevant if the Constitution requires the reduction.
>
> A constitutionally reduced verdict, therefore, is really not a remittitur at all. A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is unreasonable on the facts. A constitutional reduction, on the other hand, is a determination that the law does not permit the award. Unlike a remittitur, which is discretionary with the court …, a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause. *BMW*, 517 U.S. at 585, 116 S.Ct. 1589.
>
> We conclude that, upon determination of the constitutional limit on a particular award, the district court may enter a judgment for that amount as a matter of law. Just as the Supreme Court struck the unlawful interest from the jury's verdict in *Estill* and ordered judgment entered for the remainder, so may the district court strike the unconstitutional excess from a jury's punitive damage award and enter judgment for that amount. As in *Estill*, the power to do so is located in the court's authority to enter judgment as a matter of law. Thus, a court proceeds under Rule 50, not Rule 59, in the entry of judgment for a constitutionally reduced award and the Seventh Amendment is not implicated in this legal exercise.

170 F.3d at 1331.[2] *But see Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 146-47 (2d Cir. 2011) ("this Court has … provided plaintiffs with the option of a new trial … even where the punitive

---

[2] Although Vinson has filed this motion under Rule 59 only, the Court may choose to treat it as also under Rule 50, based on the language in *Johansen*.

damages award has been held unconstitutionally excessive under the factors set forth in *BMW*"); *S. Union Co. v. Irvin*, 563 F.3d 788, 793 n.4 (9th Cir. 2009) ("When a punitive damage award exceeds the constitutional maximum, we decide on a case-by-case basis whether to remand for a new trial or simply to order a remittitur.").

The Seventh Circuit has acknowledged that constitutional limits may constitute a question of law, but expressly declined to rule on it. *See, e.g., Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 954-55 (7th Cir. 2018). In *Beard*, the district court reduced the jury's punitive damages award from $500,000 to $50,000; the Seventh Circuit vacated that judgment and remanded "for the district court to offer the plaintiff the choice between a reduced punitive-damages award and a new trial limited to damages…." *Id*. at 953, 957. But, the Seventh Circuit did "not decide whether the Seventh Amendment prohibited the court from unilaterally reducing Beard's award on constitutional grounds" because neither party asked the district court to decide that issue. *Id*. at 955.[3] Here, Vinson contends that, under the reasoning of *Johansen* and *Ross*, this Court may reduce the punitive damages award without giving Coleman the option of a new trial on damages.

## II. Alternatively, Remittitur Is Appropriate Because The Punitive Damages Award Is Unreasonable Based on the Facts.

If this Court enters an order reducing the award as excessive under the Due Process Clause, it need not reach the question of remittitur. If it determines, however, that an unconstitutionally excessive award is a discretionary matter rather than a legal one, it may still enter a remittitur on the grounds that the award was unconstitutionally excessive for the reasons outlined above. But, the Court also could find independently that the punitive damages award is

---

[3] The Seventh Circuit has also declined to decide whether punitive damages awards under § 1983 should be limited as a nonconstitutional matter, 900 F.3d at 955-97, although Vinson does not raise that argument here.

unreasonable based on the facts, and remit the award to an amount no greater than $5,000. As explained in *Johansen*, a remittitur is an expression of the Court's judgment that an award is unreasonably high based on the evidence the jury heard. 170 F.3d at 1331. Because a remittitur can be viewed as discretionary and not constitutionally required, if the Court orders a remittitur instead of a reduction, then the Court must give the plaintiff the opportunity to consent to the remittitur or opt for a new damages trial.

Here, the punitive damages award was not reasonable based on the specific evidence that supported the finding of liability against Vinson. Coleman testified at length about the many difficulties he encountered during the two months he was at the Vienna Correctional Center: he suffered from severe back and testicle pain prior to and after arriving at Vienna (Doc. 83 at 7); he spent time in segregation, where he was in a cell for 23 hours a day, lost privileges, had his property taken away, and suffered extremely cold conditions (*Id*. at 11-12); he flooded his cell and then was handcuffed in a shower (*Id*. at 14); he had personal property destroyed (*Id*. at 16); he went on a hunger strike (*Id*. at 14); and he felt suicidal, desperate and in crisis (*Id*. at 17, 19).

Although none of the above-cited testimony supported the finding of liability against Vinson, it appears likely that the jury based their punitive damages award on the totality of Coleman's difficulties at Vienna, as opposed to Coleman's very brief encounter with Vinson, which – as the jury found – resulted in almost no compensable physical or emotional harm. Thus, it would be appropriate for this Court to remit the punitive damages award to an amount commensurate to the small fraction of harm that Coleman suffered directly as a result of Vinson's brief use of excessive force.

In sum, Vinson respectfully requests that this honorable Court grant his motion and reduce or remit the punitive damages award to bring the award in compliance with the guidelines

set forth by the Supreme Court and Seventh Circuit. Vinson suggests that a punitive damages award of no more than $5,000 would still serve the purpose of deterring future misconduct without being excessive or unconstitutional.

      WHEREFORE, for these reasons, Defendant James Vinson respectfully requests this honorable Court grant his post-trial motion and enter an order reducing or remitting the punitive damages award.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | LISA MADIGAN, Illinois Attorney General, |
| Brent D. Stratton, #6188216 |  |
| Assistant Attorney General | Attorney for Defendant James Vinson, |
| 100 W. Randolph St., 12th Fl. |  |
| Chicago, Illinois  60601 |  |
| (312) 814-4499 Phone | By:  s/Brent D. Stratton |
| (312) 814-5024 Fax | BRENT D. STRATTON |
| bstratton@atg.state.il.us | Assistant Attorney General |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DWAINE COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-898-RJD |
| ) | |
| JAMES VINSON, JARED BLESSING, and ) | |
| DAVID MITCHELL, ) | |
| ) | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2018, I electronically filed *Defendant Vinson's Motion for Reduction or Remittitur*, with the Clerk of the Court using the CM/ECF system, which will send notification of same to all counsel of record.

Respectfully submitted,

Attorney for Defendant James Vinson,

By: s/Brent D. Stratton
Brent D. Stratton, #6188216
100 W. Randolph St., 12th Fl.
Chicago, Illinois 60601
(312) 814-4499 Phone
(312) 814-5024 Fax
bstratton@atg.state.il.us